**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0473-20

IN THE MATTER OF RICHARD
HUFTEN'S APPLICATION FOR
A PERMIT TO CARRY A
HANDGUN & IN THE MATTER
OF THE REVOCATION OF
RICHARD HUFTEN'S FIREARMS
PURCHASER IDENTIFICATION
CARD AND COMPELLING THE
SALE OF HIS FIREARMS.

_____

Submitted January 5, 2022 – Decided January 11, 2022

Before Judges Geiger and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. GP-0022-20.

Evan F. Nappen, attorney for appellant Richard Huften (Louis P. Nappen, on the briefs).

Mark Musella, Bergen County Prosecutor, attorney for respondent State of New Jersey (Deepa S.Y. Jacobs, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Petitioner Richard Huften applied to expand the scope of his permit to carry a firearm, which he utilized while working as a private security guard. During a hearing, Huften made certain admissions that suggested to the court and the prosecutor that Huften had already exceeded the scope of his carry permit while working. The prosecutor orally moved for the immediate revocation of Huften's Firearms Purchaser Identification Card (FPIC) and carry permit, and for the forfeiture and sale of all firearms in Huften's possession and in his home. The court granted the prosecutor's application, ordering the seizure, forfeiture, and sale of Huften's firearms. This appeal followed.

Huften raises the following points for our consideration.

> I. THE COURT BELOW ERRED BECAUSE N.J.S.A. 2C:58-3F PROVIDES NO BASIS TO FORFEIT AND COMPEL SALE OF FIREARMS.
>
> II. THE COURT BELOW ERRED BY ORDERING SEIZURE AND FORFEITURE OF PETITIONER'S FIREARMS BECAUSE NEW JERSEYANS POSSESS FIREARMS PURSUANT TO CHAPTER 39 EXEMPTIONS AND PETITIONER IS NOT BARRED FROM POSSESSING FIREARMS UNDER CHAPTER 39 OR ANY OTHER STATUTE.
>
> III. COURT BELOW'S ORDER TO SEARCH AND COMPEL SALE OR DESTRUCTION OF FIREARMS ALREADY POSSESSED CONSTITUTES AN UNLAWFUL FORFEITURE ACTION AND OFFENDS EQUITY.

2

A-0473-20

IV. PETITIONER WAS WRONGFULLY DENIED DUE PROCESS NOTICE REGARDING GOVERNMENT'S UNPRECEDENTED ORAL MOTION TO COMPEL SALE OF FIREARMS ALREADY POSSESSED AND THE COURT BELOW'S FORFEITURE ORDER.

V. PETITIONER WAS DENIED DUE PROCESS NOTICE REGARDING GOVERNMENT'S UNPRECEDENTED ORAL MOTION TO REVOKE HIS NEW JERSEY FIREARMS PURCHASER IDENTIFICATION CARD (FPIC).

VI. THE COURT BELOW ERRED BY REVOKING PETITIONER'S PERMIT TO CARRY A FIREARM – THAT WAS GRANTED BY THE COURT BELOW JUST TWO MONTHS PRIOR AND VALID FOR TWO YEARS – WHEN MERE AMENDMENT TO EXPAND THIS ACTIVE PERMIT WAS AT ISSUE AT THE HEARING BELOW.

VII. THE COURT BELOW'S ORDER VIOLATES PETITIONER'S FUNDAMENTAL, INDIVIDUAL, CONSTITUTIONAL RIGHT TO KEEP ARMS AND SHOULD THEREFORE BE REVERSED.

Considering the facts, procedural history, and applicable legal principles, we reverse, without prejudice, the revocation of Huften's FPIC and carry permit, the forfeiture of his firearms, and their compelled sale. We affirm the denial of Huften's application to expand the scope of his carry permit.

We glean the following facts from the record. Huften applied for a permit to carry a firearm in the course of his employment at five specific locations for

3

his work as a security guard and private detective agency that he owns. On August 13, 2020, the court granted Huften's application for a limited-scope permit to carry a handgun while in the employment of All Security Detective Agency, LLC while serving as an armed security guard at the following five locations: (1) Banana King Corp. located at 996 Madison Avenue in Paterson; (2) YBH of Passaic; (3) Ahavas Israel PPJCC in Passaic; (4) Young Israel of Passaic/Bergen in Passaic; and (5) Congregation Adas Israel in Passaic. Four of the locations are Yeshiva schools or temples and Banana King is a chain restaurant. The order did not permit Huften to carry a handgun on his person while traveling between these locations, meaning the gun would need to remain locked in the trunk of Huften's vehicle until he arrived at one of the locations. The order permitted Huften to carry specified handguns.

On August 24, 2020, appellant submitted a pro se letter of need to the court and Fair Lawn Police Department to widen the scope of the carry permit to add additional locations at which he could carry a handgun. Huften argued that he was required to carry a handgun in the performance of his duties for All Security Detective Agency. It bears noting that Huften is the principal and owner of the company.

4

Huften stated that he needed to extend the scope of his permit because he is required to conduct "private investigations" and "enter buildings to check for criminal activity as a result of alarm activation," which endanger him as a security guard. The letter stated that he would be performing investigations in "Paterson, Passaic, and Newark and a few other locations that are high crime areas." Under the existing permit, Huften was only authorized to carry a handgun in Paterson and Passaic at the five specified locations.

On October 2, 2020, the prosecutor submitted opposition to Huften's application, arguing that he failed to demonstrate a justifiable need to carry a handgun at additional locations.

On October 6, 2020, the court conducted a hearing that focused on his letter of need. Huften appeared without legal representation. He claimed that if something were to happen at one of the locations he surveilled, he would be able to respond quicker if he could "jump out of the car" already armed rather than having to "grab the gun" in his trunk.

Huften was unable to establish that he had a justifiable need to carry his weapon with him while driving to the various locations that he and his team surveilled. The court expressed concern that granting the permit expansion

5

would be tantamount to allowing appellant to possess a "completely unrestricted carry permit."

When Huften's argument did not convince the court, he stated he would submit "another letter to basically explain it more," which gave the court pause because it indicated that Huften would tailor letters to "come up with some reason why [he] should be given an essentially unrestricted carry permit." As a result, Huften's application was denied, but before the hearing ended, the prosecutor asked to be heard on one point.

Due to fears that Huften was carrying his handgun at locations other than those specified in the order, the prosecutor asked the court to inquire as to where appellant was currently carrying. After some floundering, Huften stated he carries his weapon at "six locations." The focus of the hearing then shifted and became an inquiry into the extent to which Huften had violated his limited scope carry permit.

The State made an oral application to revoke Huften's FPIC and carry permit based on his testimony. The court afforded Huften another opportunity to explain whether he had carried his firearm at the sixth location he alluded to earlier. Huften continued to testify inconsistently. When asked by the court what locations he was permitted to carry his weapon, Huften responded the Ybh

A-0473-20

School, the Passaic temples, and four Banana King locations.[1]  When asked if he had carried his weapon at the Banana King locations.  Huften responded that he oversees his employees at the locations, which created additional concern because it demonstrated the lack of a justifiable need if he was only overseeing employees.

The State then made an oral application pursuant to N.J.S.A. 2C:58-3(f) to revoke his carry permit and FPIC under the public safety and welfare exception.  The prosecutor explained that Huften requested to carry at unnecessary locations and suspected he was carrying a handgun beyond the scope of the permit based on his perceived lack of familiarity with the order and his testimony.

The first mention of a compelled sale of appellant's firearms came from the prosecutor.  The State requested "revocation of [Huften's] FPIC, all other permits, including the carry permit, and to compel the sale of all weapons, wherein [Huften] would be given 120 days to sell them a licensed dealer."  The State also requested "the immediate surrender" of Huften's weapons.

---

[1]  The carry permit authorized Huften to carry a handgun at the Banana King located at 996 Madison Avenue in Paterson, not the other three Banana King locations.

The court found Huften's testimony was inconsistent, that its prior order was not being followed, and that Huften's continued ability to possess a limited scope carry permit posed a "risk to public health, safety, and welfare . . . ."  As a result, the court denied Huften's request to widen the scope of his carry permit and granted the prosecutor's oral application.

The order issued by the court states that "on a de novo review" and "having conducted a testimonial hearing," Huften's application to expand his existing carry permit was denied and the State's motion for the revocation of his FPIC, existing permit, and compelled sale of firearms was granted.  Huften was instructed to surrender his FPIC, carry permit, and all firearms in his custody and those at his residence, or they would be seized by the Fair Lawn Police Department.  Huften had 120 days from the date of the order to arrange for a federally licensed firearms dealer to purchase the firearms or they would be subject to destruction.

Appellate courts review a trial court's factual findings deferentially, Balducci v. Cige, 240 N.J. 574, 594-95 (2020), and "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions," Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015). The deferential standard is applied "because an appellate court's review of a cold

record is no substitute for the trial court's opportunity to hear and see the witnesses who testified on the stand." Balducci, 240 N.J. at 595. However, a "trial court's interpretation of the law and the consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). We review legal issues de novo. Meehan v. Antonellis, 226 N.J. 216, 230 (2016).

We first address the revocation of Huften's FPIC and carry permit. Huften argues that the lack of prior notice and meaningful opportunity to be heard violated his right to due process. We agree.

Huften received no prior notice that the State would apply to revoke his FPIC and carry permit. Instead, the State's application to revoke Huften's FPIC and carry permit was first raised by oral motion at the hearing regarding his application to expand the scope of his existing carry permit.

The Fourteenth Amendment of the United States Constitution prohibits the deprivation "of life, liberty, or property, without due process of law." Article I, paragraph 2 of the New Jersey Constitution "embrace[s] the fundamental guarantee of due process." Jamgochian v. N.J. State Parole Bd., 196 N.J. 222, 239 (2008). In fact, our Supreme Court has, "from time to time, construed

Article I, Paragraph 1 to provide more due process protections than those afforded under the United States Constitution . . . ." Ibid. "The minimum requirements of due process . . . are notice and the opportunity to be heard." Id. at 240 (quoting Doe v. Poritz, 142 N.J. 1, 106 (1995)). Huften had the right to prior written notice of the claimed violation and a meaningful opportunity to be heard, which included the right to retain counsel to represent him, before the FPIC and carry permit revocation application was heard. Indeed, N.J.S.A. 2C:58-3(f) expressly requires a "hearing upon notice" to revoke a FPIC.

Huften was not afforded notice and a meaningful opportunity to be heard regarding any alleged risk to public health, safety, and welfare that he presented before his FPIC and carry permit were revoked. See M.S. v. Millburn Police Dep't, 197 N.J. 236, 239-40 (2008) (stating that the plaintiff was "entitled to a hearing to determine whether . . . the Prosecutor's Office was capable of proving that he had committed an act that warranted the forfeiture of his firearms" and his FPIC). Due to this due process violation, we reverse the order revoking Huften's FPIC and carry permit without prejudice to allow the State the opportunity to address anew whether revocation is warranted, provided that Huften is afforded adequate notice and an opportunity to be heard.

We reach a different result with respect to the denial of Huften's application to expand the scope of his carry permit. Huften had notice of the hearing where his application was to be considered, and a full opportunity to present his arguments in favor of his application, and, thus, received adequate due process. The court's findings regarding the denial are supported by the record. We discern no abuse of discretion. We therefore affirm the denial of his application.

We next address the State's oral motion for forfeiture and compelled sale of Huften's firearms under N.J.S.A. 2C:58-3(f), which addresses revocation of FPICs and carry permits. N.J.S.A. 2C:58-3(f) provides no basis for the forfeiture of firearms already possessed.

An appellate court's review of a forfeiture of firearms and FPIC is deferential. In re Forfeiture of Pers. Weapons and Firearms of F.M., 225 N.J. 487, 505-06 (2016). "The State retains the statutory right to seek the forfeiture of any seized firearms provided it can show that defendant is afflicted with one of the legal 'disabilities' enumerated in N.J.S.A. 2C:58-3(c)." State v. Cordoma, 372 N.J. Super. 524, 533 (App. Div. 2004). "While our law governing regulation of handgun purchase and possession is circumscribed by the Second Amendment to the United States Constitution, a limitation to the right to bear arms is the

11

'public health, safety or welfare disqualifier.'" F.M., 225 N.J. at 512. Our Supreme Court has noted the legislative intent that "a court should have the power and responsibility to retain weapons on determining the owner of those weapons is a threat 'to public health, safety, or welfare.'" In re J.W.D., 149 N.J. 108, 116 (1997). "This disqualifier requires a showing by a preponderance of the evidence that possession of a firearm by the affected individual 'would not be in the interest of the public health, safety or welfare.'" F.M., 225 N.J. at 512 (citing Cordoma 372 N.J. Super. at 534). A close reading of Cordoma shows that the eight separate disqualifiers outlined in N.J.S.A. 2C:58-3(c), "any one of which is legally sufficient to deny the issuance of a permit to own and possess a firearm," relate back to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. Cordoma, 372 N.J. Super. at 534.

We also recognize that certain other statutes permit the forfeiture of firearms. See N.J.S.A. 2C:64-1 (permitting forfeiture of firearms used in conjunction with criminal activity); 2C:25-21(d) (providing for seizure of firearms owned or possessed by a person subject to a domestic violence final restraining order); and 2C:58-24, -26 (providing for the surrender of firearms, FPIC, permit to purchase a handgun, and permit to carry a handgun under circumstances that "pose[] a significant danger of bodily injury . . . by having

12

custody or control of, owning, possessing, purchasing, or receiving a firearm" pursuant to "an extreme risk protective order.").

"[A] judicial declaration that a defendant poses a threat to the public health, safety or welfare involves, by necessity, a fact-sensitive analysis[.]" F.M., 225 N.J. at 505 (quoting Cordoma, 372 N.J. Super. at 535). Here, there is no allegation, much less evidence in the record, that Huften used his handgun in conjunction with the perpetration of a crime, engaged in domestic violence, or was subject to weapon surrender under an extreme risk protective order. Nor is there any evidence that Huften improperly fired or brandished his handgun as a security guard or otherwise.

The State cites to several cases in which weapons have been seized following a "knowing violation of the gun laws." It argues that Huften's admission that he violated the gun laws of this State subjected him to forfeiture of his firearms because they constitute "firearms which are unlawfully possessed" under N.J.S.A. 2C:64-1(a)(1). We are unpersuaded by this argument as the cases the State relies upon involved domestic violence, an illegal weapon, or some other basis for forfeiture that are not present in this matter. Moreover, the State did not file a civil action under N.J.S.A. 2C:64-3 to forfeit Huften's firearms. Notably, N.J.S.A. 2C:64-3(b) requires that the forfeiture complaint be

verified and set forth the reasons for forfeiture. In turn, N.J.S.A. 2C:64-3(c) requires that notice of the action be given to anyone with a property interest in the articles sought to be forfeited.

Similarly, in order to obtain a court-ordered surrender of firearms, FPIC, and permit to carry a handgun pursuant to an extreme risk protective order, the county prosecutor must file and serve a petition on the respondent. N.J.S.A. 2C:58-25(a). No such petition was filed or served by the prosecutor.

The State further argues that the record supports the forfeiture of Huften's firearms because his actions satisfied the public health, safety, and welfare disqualifier. The disqualifier applies to the issuance of permits and an FPIC, rather than the right to possess any firearms. Additionally, unlike the body of case law surrounding the public health, safety, and welfare disqualifier, Huften has not been shown to be a threat to commit domestic violence or to use firearms to perpetrate crimes. Nor has the State demonstrated that Huften's possession of firearms in his home present a danger to public health, safety, or welfare. Huften was not shown to be "likely to pose a danger to the public." State v. Cunningham, 186 N.J. Super. 502, 511 (1982).

More fundamentally, Huften is not required to hold a carry permit or a FPIC to lawfully possess firearms in his residence. N.J.S.A. 2C:39-6(e). In

addition, for the reasons we have already explained, Huften's due process right to adequate notice and an opportunity to be heard regarding the forfeiture and compelled sale of his firearms was violated.

Accordingly, we reverse the forfeiture and compelled sale of Huften's firearms without prejudice to allow the State the opportunity to address anew whether forfeiture or surrender is warranted, provided that Huften is afforded adequate notice and an opportunity to be heard.

In light of our ruling, we do not reach the Second and Fourth Amendment constitutional arguments raised by Huften. See Comm. to Recall Robert Menendez from the Off. of U.S. Senator v. Wells, 204 N.J. 79, 95 (2010) (stating that courts "strive to avoid reaching constitutional questions unless required to do so"); Randolph Town Ctr., L.P. v. Cnty. of Morris, 186 N.J. 78, 80 (2006) (per curiam) ("Courts should not reach a constitutional question unless its resolution is imperative to the disposition of litigation.").

Affirmed in part and reversed without prejudice in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0473-20